**United States District Court**
**Eastern District of Michigan**
**Southern Division**

| | |
|---|---|
| United States of America, | Criminal No. 17-cr-20639 |
| Plaintiff, | Honorable Terrence G. Berg |
| v. | |
| D-2 Dennis Clifton Epps, | |
| Defendant. | |

**Government's Sentencing Memorandum**

**I.     Introduction**

Dennis Epps joined a sophisticated conspiracy whose goal was to distribute cocaine and heroin throughout the country.  As part of this conspiracy, Epps, and other coconspirators, agreed to travel from Alabama to Detroit to collect a drug debt.  During the attempt to collect the debt, two people—a member of the conspiracy and an innocent bystander— were brutally murdered.  Yet these murders did nothing to deter Epps from continuing to participate in the drug conspiracy.  Epps was arrested, with a coconspirator, weeks after the murders in Louisiana with what he thought was a kilogram of heroin and a firearm.

Epps pleaded guilty to Count Five of the Third Superseding Indictment, Conspiracy to Possess with Intent to Distribute Five Kilograms or more of Cocaine and a Detectable Amount of Heroin, contrary to 21 U.S.C. §§ 846, 841(a)(1)(A),

1

pursuant to a plea agreement. While this offense carries a mandatory minimum sentence of 120 months, the parties agreed in the Rule 11, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that a sentence between 120 and 180 months is the appropriate disposition of this case.

A Presentence Investigation Report ("PSR") was prepared. There are no unresolved objections. Probation determined that Epps's guideline range is 151-188 months. (PSR ¶ 71). The government requests this Court accept the plea agreement and impose a sentence consistent with its terms.

## II.     Facts

Beginning in June 2016, Mariano Lozoya Garcia, Michael Griffin, and Robert Eddins, Jr., formed a sophisticated, nationwide conspiracy to possess and to distribute cocaine and heroin throughout the United States—including the Eastern District of Michigan. Garcia, living in Texas, would supply Griffin and Eddins with kilogram quantities of cocaine on a consignment basis. Garcia would front the drugs, then collect $34,000 per kilogram after the drugs were sold. Consistent with their agreement, Griffin and Eddins met with Garcia multiple times in Texas and in Birmingham, Alabama to facilitate the distribution of the kilograms. Griffin would sell his product in Birmingham, while Eddins would sell his in Birmingham and Detroit.

In late October, Garcia fronted at least ten kilograms of cocaine to Eddins and Griffin. Eddins took his portion of the cocaine to Detroit to distribute it. On November 18, 2016, Epps and Griffin traveled to Texas to pay for Griffin's portion of the cocaine. Eddins did not pay Garcia for the cocaine that he was given. Eddins failure to pay caused a rift to develop between all three conspirators. Garcia was holding Griffin accountable for Eddins nonpayment and refused to supply any more drugs until payment was received. Garcia and Griffin communicated by text message, almost daily, about Eddins. Garcia encouraged Griffin to travel to Detroit to locate Eddins and collect the debt.

On December 18, Epps, Griffin, and another individual left Birmingham, Alabama, and traveled to Detroit to collect the debt from Eddins. The next day, at approximately 8:15 p.m., Epps, Garcia and another member of the conspiracy met Eddins at his house on Pierson Street in Detroit. The four of them drove to a Walmart in Livonia, Michigan. Inside the Walmart, all four were captured on surveillance video. The four then returned to Eddins's home. While they were at Eddins's home, Ricardo McFarlin, a friend of Eddins, arrived. At some point during the evening, Epps left Eddins's house and waited in his car approximately a block away. Griffin, and the other member of the conspiracy remained at the house with Eddins and McFarlin.

3

Griffin and the other conspirator murdered Eddins and McFarlin in the basement of the house. Eddins was fatally shot three times in the head. McFarlin had seven gunshot wounds including defensive wounds on his wrists, which are consistent with McFarlin trying to hold up his hands prior to being shot. There were also contusions on his right hand and wrist consistent with being restrained. DPD recovered eight nine-millimeter shell casings. Ballistics determined seven rounds were fired from one gun and one round was fired from a second gun. Homicide investigators also believe that pillows from upstairs were brought down to the basement and used to muffle the gun shots. Eddins was wearing the same clothing that was depicted in the Walmart video, including the Timberland boots and sweatpants, missing was the gray puffy coat that his father had got for him:



***Still Photograph from Crime Scene Depicting both victims***

Epps's phone records and subsequent text messages show that he went to a hotel in Madison Heights. Griffin stayed in the Detroit area and then went and picked up Epps at approximately 3:52 am. They drove directly back to Birmingham, Alabama, and reached there around 4:00 pm.

At 5:37 pm EST, Epps searched Detroit Free Press and News websites. He ultimately read an article about the homicide that evening. Approximately 30 minutes after Epps started searching news sites, Eddins's father, Robert Eddins III, went to the Pierson house, not having heard from his son all day. Inside, he found the house unlocked, no signs of forced entry, with music and TV blaring and the strong smell of gas from the oven in the kitchen. The three bedrooms on the main floor had been ransacked. He found his son and McFarlin in the basement with obvious multiple gunshots to the head and face.

After the murders, Epps continued to participate in the conspiracy. He and Griffin continued to communicate with Garcia, and traveled together to meet with him on January 3, 2017, in Katy, Texas. While in Texas, they received what was believed to be a kilogram of heroin. (Although Epps believed the substance was heroin and agreed to distribute it, the substance was actually counterfeit).

The next day, January 4, 2017, while Griffin and Epps were traveling back to Alabama, along with another individual, they were stopped by Louisiana State Police. Their car was searched and in the trunk near the left quarter panel under

5

the carpet, troopers located a kilogram of non-narcotic heroin byproduct. Troopers also recovered six cell phones from the vehicle. Two days later, a subsequent search of the car, revealed a nine-millimeter handgun under the driver's seat, where Epps had been sitting at the time of the traffic stop.

**III.   Advisory Sentencing Guidelines**

Although the sentencing guidelines are advisory, the Court must nonetheless begin its sentencing analysis by properly calculating the applicable range defendant faces. *See United States v. Booker*, 543 U.S. 220, 245 (2005).  The advisory Guidelines remain an important factor in sentencing. "[I]t is fair to assume that the Guidelines . . . reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *United States v. Rita*, 551 U.S. 338, 345 (2007).

In *United States v. Rita*, 551 U.S. 338 (2007), the Supreme Court restated that the goals of the United States Sentencing Commission in formulating the Sentencing Guidelines are to carry out the objectives of 18 U.S.C. § 3553(a).

In *United States v. Gall*, 552 U.S. 38 (2007), the United States Supreme Court provided a template for sentencing proceedings in the district court. The Court held that a district court should begin sentencing proceedings by correctly calculating the applicable guidelines. *Gall*, 552 U.S. at 49.

Probation scored Epps's advisory guideline range as 151-188 months. The parties entered into a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), which if accepted by the Court, requires a sentence between 120-180 months. The government requests the Court accept the plea agreement under Rule 11(c)(1)(C) and impose a sentence on Epps of 180 months imprisonment. This is consistent with the parties' agreement and would be consistent with the advisory guideline range.

### IV. Sentencing Factors

Congress has provided, through 18 U.S.C. § 3553(a), the relevant objectives and factors to be considered by sentencing courts in imposing a "sentence sufficient, but not greater than necessary."

Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation, and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution. The most relevant factors are evaluated below.

**1. Nature and circumstances of the offense, 18 U.S.C. § 3553(a)(1)**

Ordinarily, a conviction for Conspiracy to Possess with Intent to Distribute Five Kilograms or more of Cocaine and a Detectable Amount of Heroin is a serious offense and would warrant a significant sentence of incarceration. This is because of the devastating effect that drugs have on our society. CDC Data highlights the seriousness of Cocaine and the damaging and deadly effects on the population at large. The most recent complete data (from 2019) details how Cocaine is involved in 1 in every 5 overdose deaths. This year, overdose deaths were projected to exceed 100,000 people nationwide.[1]

Yet, this is no ordinary case. Not only did Epps conduct endanger the lives those individuals who purchased his drugs, but he directly participated in a conspiracy that resulted in the death of two people. Both of whom was shot multiple times. One of the victims was an innocent bystander who had the misfortune of visiting his friend at the wrong time—moments before his was to be killed.

2. **The history and characteristics of the offender, 18 U.S.C. § 3553(a)(1)**

This is not Epps first conviction. He has prior misdemeanor convictions for possession of marijuana in 2008 from Los Angeles,

---

[1] "Death Rate Maps & Graphs: Drug Overdose Deaths Remain High." https://www.cdc.gov/drugoverdose/deaths/index.html. Last Visited: October 19, 2022.

California, and Attempt Forgery in 2011 from Las Vegas, Nevada. A warrant was issued in the Nevada case when Epps failed to appear for a hearing. (PSR ¶ ¶ 48-49).

Epps described his upbringing as normal, and he was raised in a household free of abuse and neglect. (PSR ¶ 58). In fact, his parents and siblings are accomplished and positive members of their communities. Epps's decision to repeatedly travel with Griffin and engage in interstate drug trafficking, despite his upbringing, demonstrates his own poor decision making and actions out of pure greed. (PSR ¶¶ 59 and 65).

### 3. Seriousness of the offense, promoting respect for law, and providing just punishment, 18 USC § 3553(a)(2)(A)

The seriousness of Epps's offense cannot be understated. "A just punishment takes into account the consequences of a defendant's crimes, and their impact on the victims, others, and the community." *United States v. Haughawout*, 502 F. Supp.3d 1234, 1238 (N.D. Ohio 2020). It cannot be disputed that the impact of Epps's crimes has been significant. Through his membership in a violent drug conspiracy, Epps's conduct not only put dangerous drugs on the street, but also contributed to the deaths of two people. Epps volunteered to travel from Alabama to Detroit to collect a debt, with the intent to injure or harass Eddins. (PSR ¶ 23).

9

### 4. Adequate deterrence and protecting the public from further crimes of the defendant, §3553(a)(2)(B) and (C)

This factor includes two components—specific deterrence and general deterrence. Specific deterrence looks to dissuade an individual defendant from committing future crimes, while general deterrence aims to have the same effect on "the population at large." *United States v. Camiscione*, 591 F.3d 823, 834 (6th Cir. 2010).

Tellingly, the murder of two people did nothing to deter Epps from committing more crime. After the murders, Epps voluntarily traveled with Griffin to Texas to retrieve more drugs to distribute. The only reason Epps stopped participating in this conspiracy is because he was arrested Louisiana. A significant sentence of incarceration supports specific deterrence.

In this case, a sentence of 180 months is particularly relevant to general deterrence, thereby dissuading the population at large for attempting similar criminal endeavors. Guidelines stand for a very basic premise - Courts should strive to treat similarly situated people the same.

A significant sentence sends a clear and unambiguous message to those who would ignore the violence associated with the trafficking of drugs, just for money. The consequences will be severe.

### V. Conclusion

The government recommends that the Court impose a sentence of 180 months.

Dawn N. Ison
United States Attorney

*/s/ Rajesh Prasad*
Rajesh Prasad
Robert Moran
Assistant United States Attorneys
211 West Fort Street, Suite 2001
Detroit, Michigan 48226-3211
(313) 226-0281
Rajesh.prasad@usdoj.gov

Dated: August 3, 2023

## Certificate of Service

I hereby certify that on August 3, 2023, I electronically filed the foregoing document under seal with the Clerk of the Court and will provide a copy of such filing to the attorney of record, Douglass R. Mulkoff.

*/s/ Rajesh Prasad*
Rajesh Prasad
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226-3211
(313) 226-0281
Rajesh.prasad@usdoj.gov