United States District Court
Eastern District of Michigan
Southern Division

| | |
|---|---|
| United States of America, | Criminal No. 17-cr-20639 |
| Plaintiff, | Honorable Terrence G. Berg |
| v. | |
| D-1 Michael Deangelo Griffin, | |
| Defendant. | |

## Government's Amended Sentencing Memorandum

### I.  Introduction

Michael Griffin sacrificed a long-standing friendship to serve the ends of a drug trafficking conspiracy. Griffin was a member of a nationwide conspiracy whose goal was to distribute cocaine and heroin throughout the country. When his friend and coconspirator refused to pay for some drugs, Griffin, and other coconspirators, traveled from Alabama to Detroit to collect that debt. During the attempt to collect the debt, two people—his friend and an innocent bystander— were brutally murdered. Yet these murders did nothing to deter Griffin from continuing to participate in the drug conspiracy.  Griffin was arrested,

1

with a coconspirator, weeks after the murders in Louisiana with what he thought was a kilogram of heroin and a firearm.

Griffin pleaded guilty to Counts One, Three and Five of the Third Superseding Indictment. Count One charges him with Interstate Travel with the Intent to Kill, Injure, or Harass, Death Resulting contrary to 18 U.S.C.§§ 2261A(1) and 2261(b)(1). Count Three charges him with Interstate Travel in the Aid of Unlawful Activity, Death Resulting contrary to 18 U.S.C. § 1952. Count Five charges him with Conspiracy to Possess with Intent to Distribute Five Kilograms or more of Cocaine and a Detectable Amount of Heroin, contrary to 21 U.S.C. §§ 846, 841(a)(1)(A), pursuant to a plea agreement. Count Five carries a mandatory minimum sentence of 180 months, while Counts One and Three do not. The parties agreed in the Rule 11, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that a sentence of 360 months is the appropriate disposition of this case.

A Presentence Investigation Report ("PSR") was prepared. There are no unresolved objections. Probation determined that Griffin's guideline range is 360 months to Life. (PSR ¶ 90). The government

requests this Court accept the plea agreement and impose a sentence consistent with its terms.

## II. Facts

Beginning in June 2016, Michael Griffin, Mariano Lozoya Garcia, and Robert Eddins, Jr., formed a sophisticated, nationwide conspiracy to possess and to distribute cocaine and heroin throughout the United States—including the Eastern District of Michigan. Garcia, living in Texas, would supply Griffin and Eddins with kilogram quantities of cocaine on a consignment basis. Garcia would front the drugs, then collect $34,000 per kilogram after the drugs were sold. Consistent with their agreement, Griffin and Eddins met with Garcia multiple times in Texas and in Birmingham, Alabama to facilitate the distribution of the kilograms. Griffin would sell his product in Birmingham, while Eddins would sell his in Birmingham and Detroit.

In late October, Garcia fronted at least ten kilograms of cocaine to Eddins and Griffin. Eddins took his portion of the cocaine to Detroit to distribute it. On November 18, 2016, Griffin traveled to Texas to pay for Griffin's portion of the cocaine. Eddins did not pay Garcia for the cocaine that he was given. Eddins failure to pay caused a rift to develop

3

between the conspirators. Griffin texted Eddins, expressing his disappointment about the refusal to pay for the drugs: "Cuzz this is bad and you no it now he putting all this on me." Eddins replied, "Man f*ck him I'll turn around." Garcia was holding Griffin accountable for Eddins nonpayment and refused to supply any more drugs until payment was received. Garcia and Griffin communicated by text message, almost daily, about Eddins. Garcia encouraged Griffin to travel to Detroit to locate Eddins and collect the debt.

In December, Griffin repeatedly made efforts to find Eddins and get the money he owed to Garcia. On December 18, Griffin, Dennis Epps, and another individual left Birmingham, Alabama, and traveled to Detroit to collect the debt from Eddins. The next day, at approximately 8:15 p.m., Griffin, Epps, Garcia and another member of the conspiracy met Eddins at his house on Pierson Street in Detroit. They drove to a Walmart in Livonia, Michigan. Inside the Walmart, they were captured on surveillance video. The four then returned to Eddins's home. While they were at Eddins's home, Ricardo McFarlin, a friend of Eddins, arrived. Griffin, and the other member of the conspiracy remained at the house with Eddins and McFarlin.

4

While Griffin was inside Eddins's house, he was in constant contact with Garcia, who was encouraging Griffin to collect the debt. At 11:42 pm, Garcia texted Griffin, "So hes laughing at us still." Griffin responded, "Just chill dude I got him comfortable. I will not let him out my sight." To which, Garcia said, "Ok u call me." Interspersed between multiple lengthy calls between Garcia and Griffin, Garcia texted Griffin at 12:40 am on December 20, "Why don't you move him somewhere else. So they can start bringing all the money in. We want the kid as warranty." And a final warning at 1:07 am, referring to codefendant Troy Harris (nicknamed "Red"), Garcia texted Griffin "Keep in mind red he knows too much."

Griffin and the other conspirator murdered Eddins and McFarlin in the basement of the house. Eddins was fatally shot three times in the head. McFarlin had seven gunshot wounds including defensive wounds on his wrists, which are consistent with McFarlin trying to hold up his hands prior to being shot. There were also contusions on his right hand and wrist consistent with being restrained. DPD recovered eight nine-millimeter shell casings. Ballistics determined seven rounds were fired from one gun and one round was fired from a second gun.

Homicide investigators also believe that pillows from upstairs were brought down to the basement and used to muffle the gun shots. Eddins was wearing the same clothing that was depicted in the Walmart video, including the Timberland boots and sweatpants, missing was the gray puffy coat that his father had got for him, *See Sealed Exhibit 2.*

After the murders, Griffin went and picked up Epps at a local hotel at around 3:52 am. They drove directly back to Birmingham, Alabama, and reached there around 4:00 pm.

At 5:37 pm EST, Epps searched Detroit Free Press and News websites. He ultimately read an article about the homicide that evening. Approximately 30 minutes after Epps started searching news sites, Eddins's father, Robert Eddins III, went to the Pierson house, not having heard from his son all day. He found the house unlocked, no signs of forced entry. Inside, music and the TV were blaring and the strong smell of gas from the oven in the kitchen. The three bedrooms on the main floor had been ransacked. He found his son and McFarlin in the basement with obvious multiple gunshots to the head and face.

6

The murders did not deter Griffin from continuing to participate in the conspiracy. He continued to communicate and meet with Garcia. He and Epps traveled together to meet with him on January 3, 2017, in Katy, Texas. While in Texas, they received from Garcia what was believed to be a kilogram of heroin. (Although Griffin believed the substance was heroin and agreed to distribute it, the substance was actually counterfeit).

The next day, January 4, 2017, while Griffin and Epps were traveling back to Alabama, along with another individual, they were stopped by Louisiana State Police. Their car was searched and, in the trunk, troopers located a kilogram of non-narcotic heroin byproduct. Troopers also recovered six cell phones from the vehicle and the gray puffy jacket that Eddins was seen wearing in the Walmart surveillance video hours before he was murdered. Two days later, a subsequent search of the car, revealed a nine-millimeter handgun under the driver's seat.

### III. Advisory Sentencing Guidelines

Although the sentencing guidelines are advisory, the Court must nonetheless begin its sentencing analysis by properly calculating the

applicable range defendant faces. *See United States v. Booker*, 543 U.S. 220, 245 (2005). The advisory Guidelines remain an important factor in sentencing. "[I]t is fair to assume that the Guidelines . . . reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *United States v. Rita*, 551 U.S. 338, 345 (2007).

In *United States v. Gall*, 552 U.S. 38 (2007), the United States Supreme Court provided a template for sentencing proceedings in the district court. The Court held that a district court should begin sentencing proceedings by correctly calculating the applicable guidelines. *Gall*, 552 U.S. at 49.

Probation scored Griffin's advisory guideline range as 360 months – Life. The parties entered into a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), which if accepted by the Court, requires a sentence of 360 months. The government requests the Court accept the plea agreement under Rule 11(c)(1)(C) and impose a sentence on Griffin of 360 months imprisonment. This is consistent with the parties' agreement and would be consistent with the advisory guideline range.

### IV. Sentencing Factors

Congress has provided, through 18 U.S.C. § 3553(a), the relevant objectives and factors to be considered by sentencing courts in imposing a "sentence sufficient, but not greater than necessary."

Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation, and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution. The most relevant factors are evaluated below.

### 1. Nature and circumstances of the offense, 18 U.S.C. § 3553(a)(1)

The nature and circumstances of this offense are extremely serious. Not only did Griffin's conduct endanger the lives those individuals who purchased his drugs, but he directly participated in the murder of two individuals. One of the victims was a close friend of his. Yet this friendship did not prevent Griffin from binding and shooting the victims multiple times while using a pillow to muffle the sound. The

other victim was not part of the conspiracy but was in fact an innocent bystander who had the misfortune of visiting Eddins at the wrong time—moments before he was to be killed.

### 2. The history and characteristics of the offender, 18 U.S.C. § 3553(a)(1)

This is not Griffin's first conviction; it is his third. And his second federal conviction involving drug trafficking. After serving ten years in prison for a drug trafficking and firearm case in the United States District Court in Birmingham, Alabama, Griffin was placed on supervised release. (PSR ¶ 48). But this supervision did nothing to deter his criminal conduct. Griffin committed the instant offenses, and a felony theft offense while on supervised release. (PSR ¶¶ 48, 49, 51).

Griffin reported that in 2015, he was the victim of a non-fatal shooting, during a carjacking in Alabama. He was shot six times and underwent surgery. Griffin still has a bullet in his abdomen which causes him pain from time to time. (PSR ¶ 74). Yet, being the victim of a violent shooting did not prevent him from using a firearm to shoot and kill two people.

### 3. Seriousness of the offense, promoting respect for law, and providing just punishment, 18 USC § 3553(a)(2)(A)

10

The seriousness of Griffin's offense cannot be understated. "A just punishment takes into account the consequences of a defendant's crimes, and their impact on the victims, others, and the community." *United States v. Haughawout*, 502 F. Supp.3d 1234, 1238 (N.D. Ohio 2020). It cannot be disputed that the impact of Griffin's crimes has been significant. Not only did his membership in a violent drug conspiracy, put dangerous drugs on the street, but Griffin also contributed to the deaths of two people. The extent of the suffering inflicted on the victims' families is painfully evident from their impact statement. *See Sealed Exhibit 1*.

### 4. Adequate deterrence and protecting the public from further crimes of the defendant, §3553(a)(2)(B) and (C)

This factor includes two components—specific deterrence and general deterrence. Specific deterrence looks to dissuade an individual defendant from committing future crimes, while general deterrence aims to have the same effect on "the population at large." *United States v. Camiscione*, 591 F.3d 823, 834 (6th Cir. 2010).

Shockingly, the murder of two people, including a close friend, did nothing to deter Griffin from committing more crime. After the murders, Griffin voluntarily traveled to Texas to meet with Garcia and

11

to retrieve, what he thought was, more drugs to distribute. The only reason Griffin stopped participating in this conspiracy is because he was arrested. Griffin committed this offense, and another, while on supervised release. A significant sentence of incarceration supports specific deterrence.

In this case, a sentence of 360 months is particularly relevant to general deterrence, thereby dissuading the population at large for attempting similar criminal endeavors. A significant sentence sends a clear and unambiguous message to those who would ignore the violence associated with the trafficking of drugs, just for money. The consequences will be severe.

## V.  Conclusion

The government recommends that the Court impose a sentence of 360 months.

Dawn N. Ison
United States Attorney

*/s/ Rajesh Prasad*
Rajesh Prasad
Robert Moran
Assistant United States Attorneys
211 West Fort Street, Suite 2001
Detroit, Michigan 48226-3211

(313) 226-0281
Rajesh.prasad@usdoj.gov

Dated:   September 15, 2023

## Certificate of Service

I hereby certify that on September 15, 2023, I electronically filed the foregoing document under seal with the Clerk of the Court and will provide a copy of such filing to the attorney of record, Harold Gurewitz.

*/s/ Rajesh Prasad*
Rajesh Prasad
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226-3211
(313) 226-0821
Rajesh.prasad@usdoj.gov